Good morning. I should tell you before you start that Judge Litton wasn't able to be here this morning, but he will be hearing the oral arguments because we record them, so I assure you he'll be looking at it. Proceed. Good morning, Your Honors, Counsel. My name is Sean Conley. I'm with the Office of the State Appellate Defender, and I'm here today representing Mr. Courtney Atkins, Sr. Mr. Atkins was convicted after a bench trial of one count of possession of a controlled substance containing cocaine and sentenced to four and a half years in the IDOC. There is one issue on appeal. It's a Fourth Amendment argument addressing the denial of Mr. Atkins' motion to suppress. I think it's important at the outset to understand what exactly justified police intervention in this case. The officers in this case testified that they attempted to initiate a traffic stop of Mr. Atkins after seeing him commit improper lane usage. They activated their lights, and apparently just as or just before Mr. Atkins was pulling into a gas station, they did not turn on their sirens, they were not in uniform, they did not announce their office, and as they approached, they did not give Mr. Atkins any commands. Mr. Atkins then pulled through the gas station and proceeded down the street where he was seized. They did identify themselves with badges, though, did they not? They were wearing badges. Well, they were not wearing them. Did they have them in their hands and were showing them? No, my understanding was that they had playing card-sized badges around their necks. Oh, okay. Thank you. And they also had radios, according to the testimony at trial. But again, they didn't announce their office, they didn't give him any commands before he drove off. So he could have misunderstood, they were like Caterpillar employees, right? Well, the point I'm trying to make is that the law in Illinois doesn't criminalize vehicular flight from un-uniformed, from plainclothes police officers, precisely for that reason. Now, obviously, there's contested testimony here as to what exactly Mr. Atkins saw as they approached. He claims he didn't see them, and they claim that he made eye contact with them and smiled. But the point is that the law is geared towards avoiding the sort of misunderstanding that occurred, at least from the point of view of Mr. Atkins. Now, is it really reasonable? How many people have wood-wired lights on their cars? The question of whether it's reasonable, you know, I don't know if it's possible for civilians to get kids to convert their cars for that purpose. But the point is, this question has been decided in other courts, and this simply wasn't fleeing and eluding, which was ostensibly the justification for the arrest. What we're left with, then, is a custodial arrest for improper lane usage. And that's important moving forward in terms of the Fourth Amendment analysis. So with that in mind, the parties have identified three potential theories through which the police could get into the car to search it. The first would be the straight probable cause theory, which is what the basis of the trial court's order denying the motion to suppress was. Now, the officers in this case essentially testified that the real reason that they searched the car was because they had a subjective belief that there was contraband in the car. Now, that's the classic example of a search rendered unreasonable for lack of probable cause. A hunch of subjective belief cannot support a full search of an automobile. The trial court found probable cause in the supposed furtive gesture of Mr. Atkins reaching down while he was in his car, stopped at a stoplight, along with the flight. And also mentioned the fact that the police officers had initially become suspicious of Mr. Atkins because he was repeatedly checking his rearview mirror as they were driving behind him. Now, our cases in Illinois say that a furtive gesture in a car is not enough to support probable cause. A furtive gesture will only support probable cause in situations where it's accompanied by other factors that also give rise to probable cause. Unprovoked flight from police also does not support probable cause. That is a classic example of reasonable suspicion. So our contention in this case is that the police, clearly there was suspicion in this case, and clearly that suspicion was reasonable, but it did not rise to the level under our cases of probable cause. And I don't believe that the checking of the rearview mirror can add anything to that analysis, in part because that's what we're required to do as we drive down the street. The police officers were following Mr. Atkins at most, two car lengths behind him. He had a legal duty to monitor their position as they were traveling. And additionally, the police officers had testified that the reason that they found it suspicious was because they and their car were well known in Peoria for being police officers. They also testified that they had no idea who Mr. Atkins was. They didn't know him. They weren't familiar with him. They didn't run his plates before. They stopped him. They did not know that he was from the Peoria area. Any suspicion on that grounds would be patently unreasonable. That leaves us with either a tarry frisk of the car under Michigan v. Long or a search incident to arrest under Arizona v. Gant. Under Long, the officers could have conducted a tarry frisk of the car based on reasonable suspicion, as long as that search was limited to areas where a weapon might be found. And it's also only authorized when the officer possesses a reasonable belief that the subject is dangerous and might gain immediate control of weapons. And it's the immediate control that brings us out of the tarry Long situation. Long manifestly does not apply to post-arrest situations. Here, Atkins was already arrested and secured in the back of the squad car before the search, and so this was not a tarry frisk under Long. And that's also the fatal flaw in a good deal of the state's argument in terms of the merits in this case. The state's brief attempts to justify the search with tarry Long cases, such as Rodriguez, when those cases clearly don't supply the correct standard that would apply to these facts. Under Arizona v. Gant, having arrested Atkins, the officers could have searched the car incident to the arrest only if Atkins was within reaching distance of the passenger compartment at the time of the search, or if it was reasonable to expect to find evidence of the crime of arrest in the car. And it's the crime of arrest that brings us out of Arizona v. Gant. Because, again, the only thing that supported the arrest legally in this situation was improper lane usage. This was not fleeing and eluding, and the police officers knew or should have known that it wasn't fleeing and eluding. And so the question becomes, is it reasonable to expect to find evidence of improper lane usage inside the passenger compartment of the car? And I do not believe that that is a reasonable assumption to make. Because there's no theory available to support the search, the cocaine from the car has to be suppressed. Then the question becomes whether the other cache of cocaine in the case, which was found in Mr. Atkins' apartment, must also be suppressed. Following a consent. Following consent. But in a post-Miranda supposedly consensual search, that question becomes whether the police used the Fourth Amendment violation to gain consent. And in this case, I think it's clear that they have. The officers specifically testified that they only pursued consent to search the apartment because of the illegally seized cocaine from the car, and they leveraged other materials found in the car to gain that consent. Also, that consent was given at most two hours after this incident, in which Mr. Atkins was drugged from his car at gunpoint, and at most 40 minutes from an invasive strip search. In short, the police took advantage of the Fourth Amendment violation in order to leverage consent out of Mr. Atkins. This is precisely the sort of situation that we have the exclusionary rule to disincentivize, and so the second cache must also be suppressed. The only other question that the state has raised is waiver. The state makes two arguments in terms of waiver. One, that it simply waived for the lack of a post-trial motion. In terms of that argument, we have cases that have excused forfeiture in these situations in which the only mistake made was that the motion to renew the objection to the violation was mistimed. But even if Atkins forfeited the argument through not filing a post-trial motion, there's no reason for his attorney to have not correctly followed this procedure. And so it would be ineffective assistance of counsel to have not filed the correct motion. The other argument the state makes in terms of waiver is essentially that Mr. Atkins has waived the fruit of the Poisonous Tree aspect of the suppression argument. And my response to that would be, first off, that both the state and the trial court were on notice that Mr. Atkins was talking about all of the cocaine, and had intended to move on to the cocaine found in the apartment had he won the initial portion of the argument alleging the Fourth Amendment violation. In short, you can't divorce those two issues, the issue of the fruit of the Poisonous Tree from the Fourth Amendment violation, because you have to have a violation to apply the doctrine to. And it's unreasonable to ask the attorney to move on to the fruit argument when he's already lost the violation argument. With that, we would ask that this court reverse outright Mr. Atkins' conviction, and I would ask if you had any questions for me before I... Thank you, Your Honor. Counsel, you may proceed. May it please the court. Good morning, Your Honor. Also, Tom Sorrell for the people. The defendant's suggestion is that you don't have to specifically raise an argument in order to preserve it. That's what his argument is. He doesn't have to include it in a motion saying, well, I want to raise fruit of the argument, fruit of the Poisonous Tree argument. He doesn't have to argue it to a trial judge at all. All he has to do is tell the prosecuting attorney and have that prosecuting attorney mention it in passing on an objection. And that preserves the argument. That is not what the law requires. The law requires that you preserve whatever the argument is. You can't just say, hey, I've intended, or you can infer from my conduct, or what the argument should eventually be, that this is what I've intended to, and therefore it's preserved. No, it has to be specifically laid out there. And if you have an objection, you have to specify what the objection is. These are all objections, all other grounds for objections are away. If you have other ideas as far as what your defense is going to be, you can't say, well, I'm raising this defense, but you should have known that my other defenses were there. But the fact that I lost this first point, I don't have to raise the other points? That's not the law. Counsel has a duty to raise the fruit-of-the-poisonous-treat doctrine during his argument and in a motion or a post-trial motion. He didn't do that here. He didn't ask for the suppression of the evidence from the apartment and suggest that, well, okay, I've lost the initial argument on the stop, therefore I don't have to raise the other cocaine issue. It's just simple. I get to this point because the ineffective assistance of counsel claim that was raised only went to an initial brief of defense. It was only going to, he didn't preserve the motion to suppress. And whether he did or not, it's clear that he didn't file a post-trial motion. It did not raise an ineffective assistance counsel in failing to make the fruit-of-the-poisonous-treat argument, therefore it's waived as well on appeal. As far as needing a post-trial motion, I believe it's pretty clear from Enoch that language says either in a bench trial or a jury trial, you need to file a post-trial motion. The fact that some appellate courts have said otherwise or waived the requirement doesn't change what the Illinois Supreme Court has said. Therefore, I don't believe that the fact that counsel raised it in a motion to suppress but didn't include it in a post-trial motion preserved the error. As far as going to the stop itself, when we get to the point where the officers have a good reason to stop him, he's made improper blame usage. Under the law, that's good. You can stop him. He stopped. The officers testified, they got out, they had their badges. Now, there is no, I couldn't find any published cases on what constitutes a police uniform. The case that is saluted by the defendant only says that there was no testimony at all about any uniform. It doesn't talk about when you have a badge. Now, I did find an unpublished case, which obviously I can't cite, but at least you know I'm not pulling it out of my hat, saying that a badge is sufficient indicia of uniform when an officer is approaching somebody to put them on notice. And to suggest that the intent of the legislature is to only prosecute people who are approached by fully uniformed officers is to suggest that you can never prosecute when a plainclothes detective wearing his badge out is making direction for somebody to stop. That would be the import of that. And what follows then is that we have a... What you're saying is we need fleeing and alluding, right? Because of the subsequent actions of the officers, right? To make the search a valid search. Well, we need reasonable suspicion of fleeing and alluding to make it a search. In the officers' minds, if they're saying, hey, I have my radio, I have my badge out, in their minds I'm suggesting that that's sufficient uniform for the purposes of fleeing and alluding. So yes, you do need it for the purposes of the officers trying to charge you with it. But the stop itself is good. And a person can't just ignore police and say, well, yeah, they just have a badge, they don't have a full police uniform, I can just drive away. You know, you're focusing in on the uniform, but they have an unmarked car, correct? Correct. With wig-wag lines. Yes, the most famous car in the period. But isn't, why aren't you focusing a little bit on that? Isn't that enough? Well, and I guess the reason I'm not necessarily focused on this argument is that in that case, they had the wig-wag lines, but nobody testified about uniform or an issue of police uniform. So yes, that certainly put them on notice that he had to stop with the unmarked car and the wig-wag lines. And he did stop. He pulled into the gas station, stopped his vehicle. He didn't just keep driving through the gas station, he stopped his vehicle. The officer says, fine, he looked back, made eye contact with the officers, and then drove off. Smiled and then drove off with indicated knowledge of what he was doing. Smiled. Yeah. Well, he could be a happy person. Could be, but more likely than not, he was indicating to the officers that he didn't care. So, they, he drove off, the officers stopped him. Was there any indication at the time that he was under the influence of illegal drugs? Was there any thought by the officers of that? I don't think there was any testimony specifically about that. They did use improper languages, but they weren't stopping him for the purpose of DUI. There was no testimony about that. So you're saying the insidious smile was one of the indicia that the officers could consider? Well, they could consider the fact that he knew what he was doing. The fact that he made eye contact and smiled at them with their badges out, with the wig lights going on in their police vehicle. All the totality of the circumstances is really what we're suggesting. It's not simply, if somebody has a smile on their face, you're not going to arrest them or stop them just because of that. It's just under the circumstances. In Peoria, that could be suspicious behavior. New York, definitely. Anyway, the... Once the officers have at least reasonable suspicion that there's flight from them, and clearly they believe that he was fleeing from them because they got back in the car and chased him down. They fled. Exactly. So, they stop them. They jump out of their cars. They do what they do. And based upon his furtive movements, they know, at least they believe, that he's put something down in the vehicle. And that gives him reason for why he fled. And that ties in to the search of the vehicle, which even under Gant, you can do if it's related to the stop. But anyway, the main gist of this is, getting back to my first point, it doesn't matter... Even if this court finds the stop was improper, the defendant has waived on both levels the evidence that was found in this apartment. Since that was sufficient to prove him guilty of the cocaine under 15 grams, this court should be affirming his conviction. Thank you, guys. Your Honors, let's start with the ineffective assistance of counsel. In terms of waiver, again, there is case law to support the idea that this was not a forfeited argument, even in the trial court. But even if this court doesn't accept that, if there's any merit to this argument, then this was ineffective assistance of counsel. Explain again why it wasn't forfeited. Because there are cases that have excused forfeiture in situations in which the defendant brought and litigated the issue to the trial court. In other words, fulfilled all of the purposes of the forfeiture rule, but mistakenly filed the motion at the wrong time. The cases are in the brief. I don't have the names in front of me. But in those cases, Enoch's never been reversed, has he? No, Enoch has never been reversed. But Enoch's a statement from our Supreme Court from long ago. Correct. Correct. But the Supreme Court has also... In my reply brief, I lay out the timing of these cases. The Supreme Court had those cases available to it. And Enoch also shows us that there are ways other than the filing of the motion to avoid forfeiture. It's not a statement that that motion is the end all and be all of preserving the issue. But again, even if you don't accept that argument, there's no reason for the attorney below not to do this correctly. And when the issue is meritorious on a motion to suppress, it's ineffective assistance of counsel not to do it correctly. Now, in terms of the argument as it was raised in my brief, I raised it the way that I did because I believed that this is a single issue. And I think that logically it's clear that it is a single issue. You have to have the violation before you can move on to the fruit of the poisonous tree. But if I'm incorrect about that, first off, we're not required to anticipate the state raising that argument. It's still an effective assistance of counsel, even if it's possible to do this partial waiver. And even if I'm incorrect about that, the next step would be for Mr. Adkins to file a post-conviction petition alleging my own ineffectiveness for not raising it correctly in my brief. I think that we can bypass a lot of this in terms of judicial efficiency and say that this is either not forfeited or it was ineffective assistance of counsel not to do it correctly and reach the merits of the issue here. In terms of the merits, starting with the uniform, in this case there was testimony about the uniforms, and the officers testified that they were not in uniform. They were in plain clothes. They knew they were in plain clothes. And the problem is, contrary to what counsel had argued a moment ago, they didn't need reasonable suspicion of fleeing and eluding to get into the car. They needed probable cause of fleeing and eluding to get into the car. There was no probable cause for fleeing and eluding because as they testified themselves, they were not in uniform. And the plain language of the statute, the fleeing and eluding statute, tells us, and as it's been interpreted by other courts in Illinois, precludes prosecution for fleeing and eluding against un-uniformed officers. That's even with the lights, and frankly even if they had turned on the sirens, that you cannot flee and elude from a plain clothes police officer. And as we discussed before, there's good reason for that. It avoids a number of potential unfortunate... Officer wearing a badge, getting out of a vehicle. Notice is not enough. The state's basically making an argument that Mr. Atkins was on notice that these were police officers, and thus when he fled, he was committing fleeing and eluding. Or at the very least, they had probable cause, because again, it has to be probable cause to believe that he was fleeing and eluding. Thank you. And the only way that can occur is if the officer is in uniform? Absolutely. That argument has been rejected in the cases that have interpreted this statute. It's not available to the state. So, what argument has been rejected? The argument that being on notice that these are police officers because of lights, etc., is enough. You have to be in uniform. And again, the limits of... If it's an unmarked car. No. It doesn't even matter. The statute says the officer must be in uniform, shall be in uniform. And whatever the limits of the uniform requirement are, they're not in question here. These police officers explicitly testify, we are not in uniform. I would also point out before my time is up that there were no findings of fact in terms of the circumstances of the stop. The trial court explicitly, or at least purposely, avoided making any sort of finding of fact that Mr. Atkins' smile was directed at these police officers, or that he actually saw these police officers. And ultimately, the argument that the smile means that he knows who they are and he doesn't care. If he didn't care who they are, why did he stop at a stop sign? Why did he not attempt... It's a very ineffectual fleeing here. And there's plenty of evidence... He should have fled earlier. He should have fled faster, I think, if he was fleeing. I think that there's plenty of evidence on the record that he, in fact, was not attempting to elude these police officers. Thank you. Thank you. The court will take this case under advisement and render a decision with dispatch post haste.